CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 25, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROLLAND CARDELL CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:25-cv-00802 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CHRIS REHAK, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Plaintiff Rolland Cardell Campbell filed a pro se complaint naming a single defendant, Chris Rehak, who was the prosecutor in Campbell's criminal proceedings in state court. He later filed an amended complaint, with leave of court, which is the operative complaint. (Dkt. No. 15.) Pending before the court are four motions, all of which are fully briefed and ripe for disposition. The first is Rehak's motion to dismiss for lack of jurisdiction and for failure to state a claim. (Dkt. No. 16.) The second and third both concern whether the court should allow discovery before ruling on the motion to dismiss: Campbell's motion for leave to conduct limited discovery before a ruling on the motion to dismiss (Dkt. No. 22); and Rehak's motion for a protective order (Dkt. No. 24). The fourth is Campbell's motion for leave to file (Dkt. No. 29), which asks to file a supplemental memorandum in further opposition to the motion to dismiss and states that he has "newly obtained evidence" to present.

For the reasons set forth in this opinion, the court will grant Campbell's motion for leave to file his supplemental motion. It has considered that supplemental information, but it is largely irrelevant to the motion to dismiss, which is based solely on the allegations in the amended complaint.

[1] The only change from the earlier opinion and order is the correction of a docket entry number on page 18.

Because all of Rehak's actions as alleged in the amended complaint occurred while Rehak was acting as an advocate in court proceedings, he is entitled to absolute prosecutorial immunity for those actions; thus, Rehak's motion to dismiss will be granted. That said, the court will grant Campbell leave to file a second amended complaint that may include some additional allegations he raised in his briefing. In particular, Campbell's new complaint may include only allegations related to Rehak's supposed creation of the map exhibit, which—according to briefing, although not mentioned or alleged in the amended complaint—may have occurred before charges were brought and with Rehak functioning in an investigative capacity, rather than as an advocate.

Further, because the court is dismissing the complaint, the two motions related to discovery will be denied as moot. Depending on what is alleged in the new complaint, however, the court may allow very limited discovery directed solely to whether Rehak participated in the creation of that exhibit and the timing of any such participation.

## I. BACKGROUND

Campbell's amended complaint alleges the following. In 2021, Campbell was arrested and charged in the Circuit Court for the City of Radford with offenses stemming from the alleged distribution of a controlled substance, including one charge of distribution within 1000 feet of a school. The alleged sale was made to a confidential informant, who also testified at Campbell's trial. Rehak was the prosecutor on the case. Campbell gives a lot of details in his amended complaint about the proceedings, but they are not necessary to recount here in their entirety.

The important procedural background includes the following:

- The offenses in Campbell's underlying state court case allegedly occurred on February 9, 2021.
- Campbell was arrested on July 22, 2021, and the court denied him bond in

August 2021 and again in May 2022.

- He was tried before a jury in August 2022 and was convicted. His counsel filed a motion to set aside the verdict as contrary to law shortly thereafter. The motion was pending before the court for almost a year, and a mistrial was granted on July 31, 2023.[2]

- Campbell was released on bond August 15, 2023, after being held for almost two years.

- He was retried before a jury on November 1, 2024, which resulted in a hung jury.

- On January 10, 2025, the criminal case was dismissed.

(Am. Compl. 5, Dkt. No. 15.)

When setting forth the facts underlying his claims, Campbell lists nine items. Some are simply challenges to the jury deliberations and verdict and allege no conduct by Rehak. His allegations of Rehak's conduct are:

1. Rehak acted with malice by not amending charges to reflect that it was Campbell's first distribution offense;[3]

2. Rehak falsely presented Campbell's nationality to the court during a bond hearing;

3. Rehak failed to disclose evidence, including *Brady* evidence, simply relying on that fact that his office had an "open file" policy;

4. When confirming that witnesses were present at trial, Rehak stated that a witness for the prosecution and a witness for the defendant were together in his office;

5. Rehak "provided a map into evidence" of the alleged location of Campbell's offense and distance measured from school property. Campbell claims that there was "no credible source to attest [to the] validity of the map" or "confirm the distance, and that the witness couldn't provide testimony as to the accuracy of the GPS location

---

[2] Campbell sought relief from the verdict on several grounds, filed in two separate motions. (Dkt. Nos. 15-9 to 15-12.) The state court granted mistrial solely because "the testimony by the informant was not complete." (Dkt. No. 15-13.)

[3] According to transcripts attached to the amended complaint, Rehak confirmed at Campbell's first trial that his earlier offenses, although charged as distribution offenses, only resulted in convictions for possession. Thus, the charged offenses were not "second" distribution offenses as they had been charged. Rehak told the court before the jury received the case that he had meant to amend the charges but had not. (8/29/2022 Trial Tr. 206, Dkt. No. 15-3, at 62.) The trial transcript reflects that the trial court amended them sua sponte, to which Campbell objected. (8/29/2022 Trial Tr. 206–12, Dkt. No. 15-3, at 62–68.)

shown on the map";

6. Rehak relied on false and perjured testimony from an informant witness; and
7. Rehak rested without evidence or proof of the crimes charged, and the charges were never properly amended.

(Am. Compl. 6.) Campbell claims that, based on being held in custody for almost two years, he suffered emotional and psychological damages, as well as financial losses, including the loss of his residence and personal property, and his loss of liberty. He asks for $450,000 in compensatory damages and $350,000 in punitive damages. (*Id.* at 7.)

The amended complaint includes many attachments, which are primarily transcripts or documents from Campbell's criminal proceedings. The court may consider those documents because they are relied upon in the complaint, integral to it, and their authenticity is not challenged. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Rehak construes the amended complaint as asserting two legal claims under 42 U.S.C. § 1983. The first is a malicious-prosecution claim in violation of Campbell's Fourth Amendment rights. The second is a violation of his rights under the Due Process clause of the Fourteenth Amendment predicated upon the alleged failure to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Campbell does not directly dispute that characterization of his claims, but he contends that the amended complaint also alleges violations of his Fifth and Sixth Amendment rights. (Pl.'s Opp'n to Mot. Dismiss 8, Dkt. No. 19.)

## II. ANALYSIS

### A. Motion to File Supplemental Memorandum

Campbell asks that the court consider his proposed supplemental filing (Dkt. No. 29), and Rehak opposes primarily on the grounds that the filing is an unauthorized sur-reply, which is

disfavored. (Def.'s Opp'n to Mot. to Suppl. 5–7, Dkt. No. 30.) Rehak also contends that the supplemental memorandum is an improper attempt by Campbell to amend his complaint. (*Id.* at 7–8.) And he insists that even if the court considers the additional documents and argument, it should grant the motion to dismiss. (*Id.* at 8–14.)

The court has considered the parties' arguments. Given Campbell's assertions of evidence he could not previously obtain or review, the court will grant him leave to file, and it has considered his supplemental filing. The court notes, however, that neither the arguments in the supplemental memorandum nor the exhibits to it can modify or alter the content of his amended complaint, which is what the court considers in ruling on the pending motion to dismiss. In other words, and as Rehak correctly notes, (*id.*), a plaintiff's brief in opposition to a motion to dismiss does not amend his pleadings. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing . . . .").

**B. Motion to Dismiss**

Rehak's motion to dismiss seeks dismissal under both Federal Rule of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6). His assertions of Eleventh Amendment immunity are brought under 12(b)(1) as a challenge to subject-matter jurisdiction. Under Rule 12(b)(6), he contends that all claims against him are barred by prosecutorial immunity and qualified immunity. (*See generally* Def.'s Mem. in Supp. Mot. Dismiss 9–17, Dkt. No. 17.)

**1. Federal Rule of Civil Procedure Rule 12(b)(1)**

A Rule 12(b)(1) motion tests the court's subject-matter jurisdiction. Establishing jurisdiction is the plaintiff's burden. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 967 F.2d 1213, 1219 (4th Cir.

1982)). And Rule 12(b)(1) can be a proper vehicle for a variety of justiciability defenses, including sovereign immunity. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018).

If a defendant challenges the veracity of the jurisdictional facts alleged, the court may examine their truth. *Rich v. United States*, 811 F.3d 140, 145, 147–48 (4th Cir. 2015). But when a defendant "contend[s] that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper," the court must accept the allegations at face value, in the light most favorable to the plaintiff, as under Rule 12(b)(6). *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). Rehak's immunity argument is facial, not factual, so the court applies it to the facts as Campbell alleges them, drawing all inferences in his favor. *See id.* And because Campbell is pro se, the court must construe his pleadings liberally. *See Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

**2. Federal Rule of Civil Procedure Rule 12(b)(6)**

A Rule 12(b)(6) motion tests a pleading's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007). To survive, a pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The court must construe all facts and reasonable inferences "in the light most favorable to the nonmoving party," but need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). Again, the court construes pro se pleadings liberally. *Seabrook*, 148 F.4th at 269.

**3. Eleventh Amendment Immunity and Official-Capacity Claims**

The parties argue in their briefing about whether Campbell has named Rehak only in his official capacity or also in his individual capacity. Rehak contends that he has been sued only in his official capacity and thus any claims for money damages are barred by the Eleventh Amendment. He further submits that the amended complaint fails to state a proper official-capacity claim for injunctive relief. (Def.'s Mem. in Supp. Mot. Dismiss 9–16.) Campbell counters that he has named Rehak in both capacities and points out that he has alleged personal involvement by Rehak. (Pl.'s Opp'n to Mot. Dismiss 11–12.)

The court first notes that the amended complaint contains a box checked for "official capacity," the box for individual capacity is not checked, and the document nowhere expressly refers to individual-capacity claims. (Am. Compl. 2; *see id.* at 4 (stating, in factual narrative, that Rehak acted in his official capacity).) Thus, on its face it appears that only official-capacity claims are being asserted.

Still, construed broadly, *see Seabrook*, 148 F.4th at 269, Campbell's complaint is based on Rehak's own personal actions, which arguably are individual-capacity claims. Accordingly, the court will credit Campbell's assertion that he intended to assert individual-capacity claims for money damages in addition to any official-capacity claims.

As for any official-capacity claims, though, Rehak is correct that such claims against him seeking money damages are barred. *Blankenship v. Warren Co.*, 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996) (explaining that a constitutional officer like a Commonwealth's Attorney is a state actor and entitled to Eleventh Amendment immunity). Campbell seems to acknowledge this fact. (Pl.'s Opp'n to Mot. Dismiss 11 (explaining that he only seeks damages for individual-capacity claims).) And the court further agrees with Rehak that the complaint fails to request

proper injunctive relief against him. Thus, all official-capacity claims will be dismissed with prejudice.

**4. Prosecutorial Immunity**

Regarding any individual-capacity claims, Rehak argues that he is entitled to absolute immunity for each of the actions allegedly taken by him as a Commonwealth's Attorney during Campbell's criminal prosecution.[4] As to the actions alleged in the amended complaint, the court agrees.

Prosecutorial immunity protects "'the vigorous and fearless performance of the prosecutor's duty' that is so essential to a fair, impartial criminal justice system." *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). "As representatives of the people, prosecutors have a responsibility to enforce the laws evenhandedly and to exercise independent judgment in seeking justice." *Id.* (citing *Imbler*, 424 U.S. at 423–24). "The public trust of the prosecutor's office would suffer" if prosecutors had to consider their own potential liability for damages in making every decision. *Imbler*, 424 U.S. at 424–25).

A prosecutor is entitled to absolute immunity even if he or she acted "with an improper state of mind or improper motive." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005); *see also Brown v. Daniel*, 230 F.3d 1351, 2000 WL 1455442, at *2 (4th Cir. Sept. 29, 2000) (unpublished table decision) (per curiam) ("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). The doctrine is not designed, however, to excuse misconduct and "is not grounded in any special 'esteem for those who perform these functions, and certainly not from a

[4] Rehak also argues that he is entitled to qualified immunity because he did not violate Campbell's constitutional rights. (Def.'s Mem. Supp. of Mot. Dismiss 16–17.) The court does not reach that issue.

desire to shield abuses of office . . . .'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). Instead, absolute prosecutorial immunity exists "because any lesser degree of immunity could impair the judicial process itself." *Id.* (quoting *Malley*, 475 U.S. at 342. As the *Imbler* Court explained, the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. *Imbler*, 424 U.S. at 427–29. And even a prosecutor shielded by absolute immunity may be subject to criminal and professional sanctions for prosecutorial abuses. *Id.* at 429; *Malley*, 475 U.S. at 343, n.5.

Absolute prosecutorial immunity—as opposed to qualified immunity—attaches only to actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31; *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993). Thus, prosecutors are absolutely immune "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430–31). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 491 (quoting *Imbler*, 424 U.S. at 431 n.33).

To determine whether a particular act is "intimately associated with the judicial phase," the court employs a functional approach, looking at "the nature of the function performed," without regard to "the identity of the actor who performed it," "the harm that the conduct may have caused," or even "the question whether it was lawful." *Buckley*, 509 U.S. at 269, 271. Functions performed as a judicial officer or advocate, commonly referred to as advocative functions, are entitled to absolute prosecutorial immunity. *Id.*

In *Nero*, the Fourth Circuit synthesized the Supreme Court's holdings in this area, listing

functions the Court has held to be advocative and ones it has held to be non-advocative:

> A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, *Buckley*, 509 U.S. at 273, decides to seek an arrest warrant, *Kalina*, 522 U.S. at 130, prepares and files charging documents, *id.*, participates in a probable cause hearing, *Burns*, 500 U.S. at 492, and presents evidence at trial, *Imbler*, 424 U.S. at 431.

890 F.3d at 118. Other advocative functions include engaging in "an out-of-court effort to control the presentation of a witness' testimony," *Imbler*, 424 U.S. at 431, and participating in a bond hearing, even when making statements unrelated to the specific proceeding, *Dababnah v. Keller-Burnside*, 208 F.3d 467, 470 (4th Cir. 2000).

*Nero* also listed examples of non-advocative functions that are not entitled to absolute immunity:

> [A] prosecutor does not act as an advocate, but rather in an investigative or administrative capacity, when she gives legal advice to police during an investigation, *Burns*, 500 U.S. at 493, investigates a case before a probable cause determination, *Buckley*, 509 U.S. at 274, and personally attests to the truth of averments in a statement of probable cause, *Kalina*, 522 U.S. at 129.

*Nero*, 890 F.3d at 118. Likewise, a prosecutor is not entitled to absolute immunity for conducting a press conference or fabricating evidence concerning an unsolved crime. *Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999).

Here, the functional approach leads to the inescapable conclusion that Rehak is entitled to absolute prosecutorial immunity for all the actions alleged in the amended complaint. All of them involve steps taken by Rehak in the course of Campbell's criminal proceedings (and indeed, all after he was charged), and many of them took place during specific hearings or at trial. Campbell first challenges Rehak's decision about which charges to bring or a failure to amend them, a classic advocative function. *See Kalina*, 522 U.S. at 130.

In opposing the motion to dismiss, Campbell points to five aspects of his claims that he says Rehak performed not as an advocate, but in some other role.[5] The court addresses each briefly. As explained below, the actions Campbell insists were not advocative are all functions that are at the heart of the prosecutor's role as an advocate and "intimately associated with the judicial phase," as opposed to investigative or administrative functions. *See Imbler*, 424 U.S. at 430–31. Thus, the court concludes that Campbell has not alleged any non-advocative actions by Rehak.

The first function Campbell points to is in a section titled "pre-indictment and investigative fabrication of evidence." (Pl.'s Opp'n to Mot. Dismiss 12.) In it, he points to the amended complaint's allegation that Rehak introduced and relied upon a "fabricated map purporting to establish a critical geographic element of the offense." (*Id.* (citing 08/29/2022 Trial Tr. 142–47, Dkt. No. 15-3, at 21–26).) In his briefing, Campbell expands upon that allegation, suggesting that Rehak might have played some role in the *creation* of that exhibit, which was introduced at trial to establish that Campbell was within a prohibited distance of a school at the time of a drug transaction. And indeed, he seeks discovery to determine what role Rehak played in the creation of that document and when it was created.

From there, his opposition alleges that "[t]he fabrication occurred prior to or independent of courtroom presentation and involved creation of evidentiary material, not advocacy before a tribunal." (*Id.* at 12.) He relies on *Buckley*, where the Supreme Court held that a prosecutor who fabricates evidence during the investigative phase is not entitled to absolute immunity. And he

[5] Campbell also argues that absolute prosecutorial immunity should not bar his other claims at the pleading stage, pointing to alleged conduct by Rehak that is all clearly advocative conduct. (Pl.'s Opp'n to Mot. Dismiss 12, 13.) He offers no support for this proposition. If a claim as alleged is based on advocative conduct, it should be dismissed at the pleading stage. This is especially so because prosecutorial immunity is supposed to be immunity from suit. *Nero*, 890 F.3d at 117 (describing it as "immunity from suit"). Where a complaint's allegations make clear that a defendant is absolutely immune, that defendant should not be required to defend against the suit. *See id.*

argues that whether the alleged fabrication occurred "during investigation or during protected advocacy" "cannot be resolved on the pleadings." (*Id.* at 13.)

The primary problem with this allegation is that it does not appear anywhere in the amended complaint. Although the complaint mentions the exhibit and Rehak's introduction of it at trial, nowhere does it allege that Rehak created or produced the exhibit through some investigation on his own. And it is well established that a party may not amend its pleading through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, LLC*, 713 F.3d at 184. Thus, this allegation, appearing for the first time in Campbell's briefing, cannot be used to defeat the motion to dismiss.

Indeed, even if Rehak obtained or "created" the exhibit as part of his trial preparation or as an exhibit to use with a witness, that would also be a classic advocative function and entitled to qualified immunity. *See Imbler*, 424 U.S. at 431. Campbell's reliance on *Buckley* for the contrary conclusion is misplaced. In that case, the court held that prosecutors were not acting as advocates when they he fabricated evidence *during the investigative phase of the case*, prior to presenting it to the grand jury. Here, Campbell suggests in his briefing, but does not allege in his amended complaint, that Rehak created the document during the investigative phase of the case. And the trial transcript is not entirely clear about the exhibit's origins, nor has any party provided the exhibit.

Based on the testimony at trial, it appears that the exhibit is a photograph of a map, and the photograph was created by someone in the prosecutor's office. The photograph said, "crime GIS map" and contained a "dot" indicating where the drug transaction allegedly occurred. According to Detective James Smith, who testified about the exhibit, the dot was based on the GPS location device worn by the informant purchasing the drugs, video of the transaction, and

observations by law enforcement in real time. Detective Smith testified that he obtained the map information depicted in the photograph. He started to explain that the map was "pulled up" by an individual at Radford University, but then defense counsel instructed the witness to talk about what he did, "not what anybody else did." (Trial Tr. 142, Dkt. No. 15-3 at 21.) After that instruction, Detective Smith did not provide further explanation about where the map came from. (*Id.*) Thus, the testimony suggests that the detective obtained the map from a third party and added the dot showing the location of the alleged transaction, and then the Commonwealth Attorney turned it into a photographic exhibit. And because the amended complaint does not allege that Rehak created the document or that he did so as part of any pretrial investigation, the allegations as currently pled do not plausibly allege actions that fall outside of traditional advocative functions.[6]

Even so, Campbell may be able to allege additional facts sufficient to fall within *Buckley*'s proclamation regarding the creation of this exhibit. If, for example, Rehak created the exhibit in conjunction with working with police to investigate Campbell's criminal activity and before initiation of criminal proceedings, that would likely not be an advocative function. Thus, while the court dismisses this claim based on the allegations in the amended complaint, it will do so without prejudice and grant Campbell leave to amend as to this claim only.

Second, Campbell claims that Rehak withheld exculpatory evidence of a witness agreement with the witness informant, and he explains how he believes this violated his Due Process rights. Disclosure of discovery and evidence, however, is a classic advocative function

---

[6] Moreover, the fact that testimony does not conclusively establish who prepared the exhibit, or where the map otherwise came from, does not mean that the exhibit itself was "fabricated" or "falsified" in any way, as was the evidence in *Buckley*. There, it was alleged that prosecutors sought out an "expert" who was known for fabricating evidence after three separate studies could not conclusively match a bootprint on the victim's door to the petitioner's boots. *Buckley*, 509 U.S. at 263. At the prosecutors' urging, the new "expert" opined that the bootprint matched. By contrast, Campbell does not explain how the map exhibit was "false." *Id.*

and triggers absolute immunity. *E.g.*, *Burns*, 500 U.S. at 490–92 (holding that a prosecutor who allegedly withheld materially exculpatory evidence was entitled to absolute prosecutorial immunity for that action); *Brown*, 2000 WL 1455443, at *2 ("[P]rosecutors are entitled to absolute immunity from civil liability for the allegation that they withheld exculpatory *Brady* material.").

Campbell suggests that the additional evidence he has submitted shows that Rehak "had a longstanding, pre-indictment role in managing an investigative asset," *i.e.*, the informant. (Pl.'s Rebuttal to Def.'s Opp'n 5, Dkt. No. 31.) Nothing about such "management" was in the amended complaint, however, which means no such allegations are currently before the court. Moreover, the fact that the informant had been used in many other cases or transactions does not mean that Rehak played any *investigative* role, either in those cases or in Campbell's. Campbell does not allege or offer anything to tie Rehak to the informant outside of his agreeing to dismiss earlier criminal charges against him and other than gathering information related to the confidential informant to respond to a request for *Brady* information in Campbell's case.

At most, the exhibits attached to Campbell's supplemental memorandum show that Rehak was familiar with the informant and had information about his activities and controlled purchases for law enforcement, (*see generally* Dkt. Nos. 29-4 to 29-8), which obviously may have impacted Rehak's assessment of his credibility. But that assessment is entitled to prosecutorial immunity. *Buckley*, 500 U.S. at 273. Nothing in the exhibits suggests that Rehak managed the informant or otherwise performed any investigative function related to the informant, and the amended complaint contains no facts to support that.

Third, Campbell suggests that Rehak acted as a "complaining witness" at one of his bond hearings by making false factual representations about Campbell's citizenship and risk profile.

He relies on *Kalina v. Fletcher*, 522 U.S. 118 (1997), but that case does not offer the support he seeks. In *Kalina*, the Supreme Court held that a prosecutor was not entitled to absolute immunity with respect to her actions in executing a certification for determination of probable cause in connection with the filing of charges, because the act of filing a certification is not advocative in nature. Neither federal nor state law required the certification be made by a prosecutor; it could have been made by any competent witness. And the prosecutor's testimony was under oath and therefore sworn testimony. *Id.* at 130–31.

Arguing at a bond hearing—even including misrepresenting facts to the court—is altogether different in function. Nowhere does Campbell allege that Rehak gave sworn testimony in court or at the bond hearing.[7] Misrepresenting a fact to the court—even knowingly—does not make an attorney a witness, however, and certainly not a complaining witness. Thus, this conduct is advocative and is entitled to absolute immunity. *See Dababnah*, 208 F.3d at 470 (identifying arguing at a bond hearing as advocative); *Burns*, 500 U.S. at 490–92 (same as to knowingly presenting false evidence to the court).

Fourth, Campbell makes an allegation of "witness tampering" because Rehak had both a defense witness and Commonwealth witness together in his office, while waiting to testify. He relies on *Buckley* for the proposition that this type of "witness management" is not a core

[7] Furthermore, as pointed out by Rehak, the transcripts from Campbell's various bond hearings do not support that Rehak *testified* at any of them. Campbell relies on Rehak's conduct at the May 16, 2022 bond hearing. (*See* Reply in Further Supp. of Mot. to File Suppl. Mem. 7, Dkt. No. 31.) But that transcript simply reflects Rehak's pointing out statements on documents during his cross-examination of Campbell regarding his citizenship. (*See* 05/16/2022 Bond Hr'g Tr. 30, 35–36, Dkt. No. 29-9, at 32, 37–38.) Cross-examination of a witness during a bond hearing is indisputably an advocative function, as the court notes in the text. Furthermore, the state court said it was not going to consider his citizenship in its decision, and the court denied bond at that hearing and at the prior hearing primarily because of the seriousness of the charges and his extensive prior criminal history, which included convictions for failing to appear. (*Id.* at 39, Dkt. No. 29-9 at 41; *see also* 09/24/2021 Bond Hr'g Tr. 12, 24, Dkt. No. 29-9, at 14, 26 (reflecting that prosecution in prior bond hearing (via a different Commonwealth's Attorney) stipulated that Campbell was a citizen of the United States and the court nonetheless denied bond because of the charges, his extensive criminal record, and the potential danger he posed to the community).

advocacy function. The court disagrees, at least on the facts here. Based on the transcript Campbell has supplied, there were two witnesses who were together in Rehak's office before testifying at trial, and both were police officers in uniform who had walked into the courthouse together. Despite Campbell's statement to the court during his trial that he found it "sketchy," the witnesses were separated as soon as the court granted the defense motion to separate witnesses. (08/29/2022 Trial Tr. 10–12, Dkt. No. 15-3, at 10–12.) He has alleged no facts to plausibly suggest that there was anything sinister or improper about that or even that Rehak was responsible. But even if Rehak purposefully placed both witnesses together, that was a decision or action taken as an advocate, not an investigator. *See Buckley*, 509 U.S. at 273 (including as advocative engaging in "an out-of-court 'effort to control the presentation of [a] witness' testimony'") (quoting *Imbler*, 424 U.S. at 431).

Fifth and finally, Campbell argues that "the combination" of an alleged *Batson* violation and the "knowing use of perjured testimony" creates a pattern of conduct that should not be dismissed at the pleading stage. He relies on *Napue v. Illinois*, but that case involved a collateral challenge to a conviction, via a petition for a writ of error coram nobis, and the respondent was the state of Illinois. 360 U.S. 264, 266–68 (1959). It was not a civil action against the prosecutor. The case nowhere addressed prosecutorial immunity; indeed, the terms immune and immunity do not even appear in the opinion. *See generally id.* Thus, while its principles might have supported a habeas petition had Campbell been convicted, it does not help Campbell in bringing a civil claim against his prosecutor. Striking a juror based on race and knowingly using perjured testimony would be grievous acts by a prosecutor. But again, absolute immunity is not there to protect prosecutors who knowingly violate laws or rules. It is there to protect the system of justice, which requires generally that prosecutors must be able to make decisions and perform

their traditional advocative functions without worrying about whether they might be subject to civil liability for every decision. *See Kalina*, 522 U.S. at 127.

Because all the actions Campbell alleges in his amended complaint are advocative in nature, Rehak is entitled to absolute prosecutorial immunity for them, and his motion to dismiss will be granted. As to the one claim concerning the creation of the map exhibit, the court will dismiss without prejudice and the court will grant Campbell leave to amend, if he chooses.

**C. Motions Related to Discovery**

Campbell has asked for leave to conduct limited discovery as to whether Rehak "personally participated in pre-indictment evidence development." (Mem. Supp. of Mot. Discovery 3, Dkt. No. 23.) Campbell states that he wants discovery to determine whether Rehak engaged in conduct occurring before he was charged that was investigative in nature, especially as related to the development and use of the map evidence and any involvement in "witness-related fact development." (*Id.* at 1, 3.)

Rehak has filed a protective order asking that no discovery occur before the court rules on the motion to dismiss. (Dkt. No. 24.) In opposing the motion for protective order, Campbell insists that he seeks only "discrete and identifiable materials" consisting of the cooperation agreement with the confidential informant including records reflecting payments or benefits given to him, "documents identifying the origin and authorship of the geographic map evidence," and "one interrogatory identifying when [Rehak] obtained or relied upon such materials prior to indictment." (Pl.'s Opp'n to Mot. for Protective Order 3, Dkt. No. 26.) Having now ruled on the motion to dismiss and dismissed all claims, both motions will be denied as moot.

If Campbell files a second amended complaint, he may request discovery anew related to the one allegation permitted in the amended complaint. But the court cautions that any second

amended complaint shall not include allegations that the court already has determined are subject to absolute prosecutorial immunity, and the court will not allow discovery as to any of those issues, either.

III. CONCLUSION AND ORDER

For the reasons discussed above, it is hereby ORDERED as follows:

1. Campbell's motion to file a supplemental memorandum (Dkt. No. 29) is GRANTED, and the court has considered his proposed supplemental memorandum in ruling on the motion to dismiss.
2. Rehak's motion to dismiss (Dkt. No. 16) is GRANTED, and the court hereby DISMISSES WITH PREJUDICE all claims in the amended complaint except any claim related to the map exhibit introduced at the August 2022 trial. As to that claim, the amended complaint is DISMISSED WITHOUT PREJUDICE, solely because information set forth in the briefing suggests that it might be possible for Campbell to state a claim against Rehak that would not be barred by absolute prosecutorial immunity. Thus, if he chooses, Campbell may file a second amended complaint against Rehak not later than 30 days after entry of this order. The only claim that his complaint may include is any claim related to the creation of the map exhibit. The second amended complaint must be a new pleading, complete in all respects, which stands by itself without reference to any earlier-filed complaint, document, or attachment. **Campbell is advised that his failure to file an amended complaint within 30 days after entry of this order shall result in the dismissal of this case.** Alternatively, Campbell may file a notice declining to amend, in which case the court will enter a final judgment, which would allow Campbell to file an immediate appeal

from this order to the United States Court of Appeals for the Fourth Circuit. *See Britt v. DeJoy*, 45 F.4th 790 (4th Cir. 2022) (explaining that a party may not appeal from an order that dismisses claims without prejudice and grants leave to amend).

3. Campbell's motion for limited discovery (Dkt. No. 22) and Rehak's motion for protective order (Dkt. No. 24) are both DENIED WITHOUT PREJUDICE as moot in light of the court's ruling on the motion to dismiss.

The Clerk shall provide a copy of this opinion and order to counsel of record via CM/ECF and shall provide a copy to the pro se plaintiff via first-class mail.

Entered: September 25, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge